Washington Alliance of Technology Workers, Affiliates v. United States Department of Homeland Security, et al. Mr. Miano for the Affiliate, Mr. Press for the Government Affiliates, Mr. Hughes for the Association Affiliates. Mr. Miano, thank goodness we can see you. Thank you. We've had some technical problems. The building has basically lost its internet. So I'm sorry we're having to do with the phone. We may lose the video. OK, well, we can hear you. So please proceed. OK, please proceed. May it please the court. The statute at issue of this appeal is very clear. In fact, it is so clear that until now it has never suffered from conflicting opinions in the courts. The student visa authorizes admission of bona fide students solely to pursue a course of study and an approved academic institution that will report termination of attendance. Those are the requirements for student visa. Yet DHS has disregarded those requirements to transform student visas into the largest guest worker program in the entire immigration system by allowing aliens to work in the United States when they do not conform to those requirements. The regulation at issue is an excessive DHS authority for two reasons. First, it allows aliens to remain in the United States when they're not pursuing a course of study. And it allows aliens to work in the United States while not pursuing a course of study. And the practicable effect of this is that DHS has created its own H-1B program, the regulation that circumvents the caps on H-1B visas that protect American workers. Mr. Miano, can I ask you to just pause for a minute or two and focus on the government's argument that your association lacks standing? If you don't mind, would you focus on that? And maybe you could start by telling me, for you to have standing at the summary judgment stage, you have to show that a member of your association is competing with OTP workers, right, who are not attending school, who are subject to extensions. So could you point the court where in the record that what is your best evidence of that? Best evidence of that, Your Honor, is one, that this regulation is targeted to the tech industry. So the workers coming in here are specifically targeted to the tech industry. And we have the plaintiff is a union of technology workers. But under our decision in Mendoza, if you want to make that argument, you have to show that one of your members is, quote, a direct and current competitor whose bottom line may be adversely affected by the challenge government action. That's a quote from the case. So where is that evidence in the record? The evidence in the record, Your Honor, is that the workers in question here are working in the tech industry. They're active, currently active workers. And in the case of Mr. Smith, he's up as a temporary worker. So it's continuously searching for for work. But the standard is Mr. Mr. Mr. Smith. He is a temporary worker. The novel argument that the government raised was that now that that two of these two of the names named members of the association are now two of the main members of the association are employed. Government's argument is now that they're no longer competitors, that they're no longer in the industry. The standard in this in for for competitive standard is whether the regulation issue allows competition against them. And Louisiana, like Louisiana Energy, which and and this report is repeatedly held that a party suffers injury. In fact, it's petition is allowed against them. And in this case, it's not even allowed. It's directed towards them. Let me ask you to, you know, in, in response to your in the district court in your in the appendix that you filed in support of your motion of summary judgment, you had a very helpful table listing all of the allegations in support of standing you know what document I'm talking about. Yes, Your Honor. Okay, so. And you have two columns there you list the allegations. And then the evidence for each one. And, and as I go through it next to every one of the allegations, which claim that that which claim that applications have been made for opt extensions for workers in companies where your members apply for jobs. There's 27 of those. It says there's no evidence. That's a 27. I'm. I'm look up here what you're what you're referring to. I'm looking at your chart, where you have I didn't write down the numbers but but there there are 27 different allegations, which claim that applications were made for. Opt extensions for workers in companies where you're where your members have applied for or jobs are working, and each one has this foot has this statement that there's no evidence because it's only in it's in the hands of the department. Right, you're right. Okay, now I see what you're talking about. Yes. So that. What, what are we, what's your given that we're at summary judgment here and you have to actually prove standing. You know we're not at the most of the message anymore that what it what is that, what does that table mean to you, your honor what that would what the difference is here is that we're now talking about specific job losses, and that's a concept this court repeatedly rejected. You don't have to show specific losses of sales, but rather you have to show that competition is allowed against you. And in this case, you know where we're talking about program that allows 200. Are you referring to Mendoza. No, I'm not referring to Mendoza I'm returning to like surely versus rebellious that rebellious the standard is that says that that the issue isn't lost sales per se, it's the allowance of competition. And so we have more competitors in the market, you add 400,000 you add 200,000 competitors into the technology market in the US market, you're affecting everyone who's in the, in the market. Now, in theory, that would be people might say that that's a generalized grievance, but we would flip around things that when DHS does something as broad as this, where it's adding is money for workers it injures more workers. I thought this Mr. So Wade, I'm not sure as a W a de. I thought his affidavit was more concrete. This to me. Yes, Your Honor. Yeah, we different to how the people, how the people specify them, what they do, but Mr Suede has worked in the tech in tech industry, he's been laid off. He's worked as a temporary worker, and now is back working full time, and all of this has occurred during the course of this litigation. So we're now. So we have these workers who are, you know, they're applying for jobs, you're working for jobs, and these are just representatives of an entire union that represents tech workers. All right. Judge Taylor, do you. Does that answer your questions on standing. No, but go ahead with. Well, I mean, I don't have any. Okay. I had a broader question on on standing I do see the logic of your position that you know competitor standing the premise of it is, if in the business to business context if regulation eases restrictions on one business that harms a competitor, and in Mendoza. If immigration law gives a opportunity for people in a field, you know animal herding, that is going to change the employment prospects of domestic animal herders, and I'm not sure that I see an outer bound but it, it is when you get into a field like stem which is very diffuse and large and ill defined. It does seem like the implications of our case law, which of course is on us, are that any working person in the United States would have standing to challenge any immigration law that affords worker permission that authority to work to people coming in, and, and I'm just wondering whether you have any help for me and thinking that through. Well, like in the shades versus FTC case, you know, basically, basically said that anyone had standing. Who was in the, in the electoral field, okay, because the generalized grievance has to two parts. One has to affect a lot of people. And to it has to give nebulous injury. Okay, here we're not dealing with nebulous industry increased competition, the allowance of increased competition has been treated as a as a concrete injury by this court consistently. So that takes it out of the range of generalized injury. Well, even though, Mr me I know that the brief of the tech companies, make a point that that I think is economically supported by at least some evidence, which is that certain certain tech workers may not have a net negative effect on employment, but in fact a net positive, you know, if you bring in people who have key skills that will allow an a business to do something they may need more workers to come together and accomplish that, that they couldn't do it all without the kernel of of knowledge workers, and, you know, so then it becomes a question of well who's burden and, and are that none of that is in the record. But it, but it isn't always clear that adding worker a to the economy depresses opportunity for worker be and again I'm not sure how to think about that. Well, Your Honor that concept has been rejected by standing Supreme Court that Senate, we don't take benefit. We don't take the benefit to to diminish the in the injury. Plus, we would argue that that, you know, that those studies claims are malicious I mean they fly in the face of the basic law of supply and demand. And the problem that we're facing in the tech, I'm sorry you referred to the Supreme Court case saying we don't take the benefit to diminish that what what case are you thinking about. I'm, I can't think of the case right off now but that was the argument that was that was used in Texas versus United States. The DACA case, where the plaintiff, the defendants argued there was no injury because, you know, for having provide driver's licenses because they're getting getting payment, but the courts rejected that because he said there's not a plus or minus. It's like basic trespass last law, if someone comes comes on your property sees a piece of trash into property and walks over and picks up the trash, you still been injured by trespass even though you suffer, suffer to benefit. But the problem we're facing the tech industry is Americans are being displaced. I mean, physically one for one, this place. So, what's being told you know is it creates creates this benefit but when you're working in the industry for example, just title hold heard on one of our cases, we Americans that have literally been replaced by H1B workers by by foreign workers being brought brought in. And these, unfortunately in H1B program there's no, the only protection for American workers under H1B is limits on the number of workers, so like you can go in and take to it. Were you referring to save jobs, is that the case you were just referring to. But in that case. In that case it was actually evidence that it's members. It's members. It's members have been have been had affidavit saying some of them had been fired and replaced by each one. I mean, they've been bought. Right. You don't have any evidence like that here, right. No, these people. It's just standard plain vanilla competition where You see the point, I think the point, Judge Pilgrim and I are both probing here is that the quote plain vanilla may not work in summary judgment. And I'll just go back to read you. Mendoza says you need direct and current competitor. Here. Yeah, you have to show that one of your members is a quote direct and current competitor. Direct and current competitor. All right. And I would point out that in save jobs USA. The court says the department over reads our direct and current competitor formulation which simply distinguishes an existing market participant from a potential and unduly speculative part of participant and then goes on to say We know that these H1B visa holders have competed with save jobs members in the past. And as far as we know, nothing prevents them from doing so in the future. If that's good enough for H1B. I don't know why it isn't good enough for F1. Yeah. Well, thank you. I mean, that's basically our position, but and and I'll give you two different ones in Mendoza. These are people who are just wanting to get into the business. In this case, these are, this is a union of people actually in the business. I mean, these aren't Aren't people is speculative. These are computer programmers network people who are actually actually do it and getting back to the generalized grievance type thing. I mean, what we have is a post DHS does a regulation to import foreign butchers. Okay. In theory, only the butchers would have standing to challenge such a regulation. If they then have a regulation to in for bakers. Then only bakers would have regulations, but when they start having butchers bakers and candle makers increase the increase the number of fields that are eligible. It seems to me they're increasing the number of people who have standing to challenge it. So if they say, hey, You know, we're just letting tech workers in which is main part of this regular extension is tech workers, you would think only tech workers if they said this regulation to lie. Anyone said effectively would sound fair. They're opening standing to the entire world. Yeah, Mr. Biano you've used up your time, unfortunately, on standing, but let me give you Since I think you're the only one Challenging. I don't think the Association. Is why don't you take at least three minutes to address the merits. Well, your honor debate. The problem. The merit. The merits here is that we have a very clear regulate very clear statute that has never had any problem interpretation. It says that we have to have bonafide students pursuing a course of study at an academic institution. Instead, we have To have people were calling students who are working after graduation have no connection to university. They're not attending class they finished their, their course course of study and DHS has taken up upon itself to To create a guest worker program to allow these workers provide labor. And in fact, the regulation. This litigation was explicitly designed to increase the amount of labor by replacing by substituting to circumvent the quotas on H1B visas and Mr. Biano, in your view is is the graduate who stays in the United States for a couple of months after graduation out of status and deportable the day after graduation. Your honor, but what you've now hit on, I guess, would be runs into what I Einstein's theory of relativity, that we can't have instantaneous instantaneous movement. And I think that that creates the type of gap that Chevron doesn't even exist. What happens when Congress says create something that's impossible. So what They had 60 days to I thought they had 60 days to leave. Not under the statute only under the regulation. Is that right. And the question is, what's the what's the what's the statutory support for that regulation. Well, I would what I would say in that case, and this is we're getting into theoretical But Chevron is kind of a one size fits all. And what we what we have there in the case what you've described the statute creates an absolute impossibility for the agency. They can't leave the next day and instantly be gone. So in that case, there's certain discretion. How do I, how I do it and DHS has said, okay, you can get you can leave at give 60 days and you can leave But really, I mean, it seems like on your theory, the student who is you know that that students should be applying for tourist visas for any day that they plan to stay After graduation and that the that the rule under your theory, the 60 day rule is is a statutory violation and that maybe, maybe the, you know, Homeland Security will have a But, but the rule, the statutory authority for that rule doesn't that rise and fall on your theory, just like the OTP rule would have to rise and fall on your theory. I don't think so, Your Honor, because what what you're, unfortunately, in the immigration statute, there are a number of absolute impossibilities that Congress has enacted, I won't go It's not an impossibility to schedule a flight or get a tourist visa. Why is that a possibility. Well, you schedule a flight to be in. Oh, I've got my degree will move. And I think there's a big difference between giving someone time to actually leave the country, you know, for a modest Period of time to leave the country is entirely different than allowing to stay for 42 months so they can provide labor to labor to Microsoft Well, and as a matter of fact, they are allowed to stay In the summertime between Years of study and they're not pursuing not necessarily pursuing a course of study. If there are no more questions, then we'll give you a couple minutes and reply. Mr. Miano, Mr. Press. Thank you, Your Honors Joshua press from the Department of Justice here on behalf of the government police Your Honors, we think that this is a simple case for for two principal reasons. So one is the questioning of Mr. Miano sort of getting at The standing questions do linger in this case, and it is different from judge tables opinion and save jobs, simply because at no time have the plaintiffs or the rather watch text members actually shown that they were in direct and current competition. We know from Judge Henderson's opinion that at the motion to dismiss stage they did have standing Because of their allegations that they were still searching for jobs and the complaint, but at the motion for summary judgment stage is this court has made Pretty clear numerous times, including in Humane Society, which we cite to and discuss in our briefing at summary judgment stage, the burden is is greater upon us. And that's why we made the argument that we did. I will be depressed. Why isn't it enough as as Mr. Miano briefing asserts that the people who are in jobs, his, his members who are in jobs that that presumptively their wages may be depressed. By the existence of the program. So it's not just about competition for job openings. It's also about The conditions of the job that one has, if there are people who are eager to get it on on weaker terms of, you know, supply and demand. Isn't it sort of presumed by the law of economics that they're harmed, even if they're employed. Well, I think that's a good question. Your Honor, I think The problem for that with that argument, though, is that courts don't typically presume things for the purposes of standing. Now I will admit The law of economics does come into play. And that's why the competitor standing doctrine exists, but I think this court's case law has been pretty clear that that's why there is a need for direct and current competition. If you simply look at the affidavits that were filed by flash text numbers. They really don't talk about anything that your honor's question is getting at with respect to depressed wages. They talk about I've applied for these jobs and I didn't get I think the difficulty there and I mean we're sympathetic to that. But the difficulty is when you're talking about the actions of third parties. And their decision making processes to whether they hired or not someone who interviewed for a job. You're, you're falling directly into the Luhan versus defenders of wildlife much more is needed category to bridge that gap and fill that presumption that your honor's question is sort of getting at I mean, with with the wages issue. I can just tell you that there's really nothing in the record about that. So it's really all about what Mr me. I was getting out of. Am I being replaced by A foreign student or international student under the OPT program. There is nothing in the record about any sort of replacement theory as there was in save jobs with judge tables have been in there. What, what's the defect. Mr Reno mentioned an affidavit by an employee name. So I say, so I say, so I think what's the defect in that affidavit. So with Mr so what is the issue there. No problem. And that's how I hope that I'm pronouncing that correctly. So the correct me if I'm wrong. But I think with with Mr swatting circulation in particular. He never actually alleged I think the last time he got a full time job was in 2018. And that's it. That's all we know. He started in June 4 2018 I think that's a J a page to 15 in the appendix, and the problem that we had with that was that when we moved for summary judgment was in about a year, two years ago so it was in fall of 2019. And essentially, we had not heard of anything about Mr so what is employment search or career path or anything like that for over a year at that point. And so we thought well that doesn't actually get at current competition that's past injury and because the words are direct and current as your honor was pointing out before that places an emphasis on the present tense not future tense or past tense, perhaps, perhaps immediate future for purposes of typical standing analysis but there's nothing in the record about presently, he was being affected with that he was actually looking for a job. Yes, finish. Well, Mr. Viano might, and he has in previous iterations of this litigation, sort of argued, well in our complaint we say that our job search is constant, but I think the problem with that argument has just blurred was getting at was that when you're sort of opening that up to ever I'm competing with literally everyone in the science, technology, engineering and mathematics field. That is extremely similar to taxpayer standing because what we're really saying is, as long as someone wants to get a job and foreign students or international personnel might come in and take a job. Therefore, I have standing to challenge that entire right go ahead. Judge Henderson. All right. And why haven't we said precisely that in save jobs USA when we've said, in this case, we know that h1 visa holders you can substitute f1 have competed with save jobs members in the past and as far as we know, nothing prevents them from doing so. In the future, and the language about in the same case the department overreads are direct and current competitor formulation. I think that that is a good question. It's interesting because it's sort of an echo effect between this case, and that case. And because that that case does site, I think to your honor's opinion from Washington to the motion to dismiss phase. I think the distinction truly is that there was already evidence in the record at the summary judgment phase in save jobs of direct job box by one of the competitors and I think that's sort of the problem here is, we have no evidence of anything like that it's much more diffuse. And second, there's no evidence that they're currently still looking for a job. And I think, yes, please. I was just gonna say I think the standing issues are kind of a problem of our creation and we will have to address them but I'm interested in your position on the merits. Yes, how typical are you defend this provision on the ground that it is the seeks to enter language means that the conditions of these visas are assessed at the outset, and that after that it's sort of up to the DHS to to put conditions and both of time and activity. Are there other how many other provisions are in the seeks to enter form and and would the effects of your position be limited just to those. I think that I will first I'll try to answer the first question. I don't actually know that the number of definitions that sort of use that language. There are, it's really alphabet soup, when it comes to the different status and categories of visas that foreign nationals can choose to pursue. I do think that, you know, if you if you look at just a typical example of a be visitor. They're seeking to enter, you know, for a temporary period of time for pleasure and or temporary business purpose or something along those that of that nature, there's language that specifically bars them from working when they're trying to get into that category. I think the, the reason why we're making that argument that this is going to admissibility determinations is because number one, when a foreign national needs to to get an F1 visa, they have to go to the State Department in a consulate and they have to show, hey I've enrolled at this university or at the school, and I want to take these types of classes, and they have to prove to the consulate that they really are going to be a bona fide student, then they have to come in to a port of entry, and they have to talk to a CBP Border Patrol or Customs and Border Protection officer at an airport or something like that, and say, you know, I got the visa that from the consular officer. Here are my papers from the school. I'm really excited to be here I want to go to class, etc. But once they enter the United States once they're admitted into the United States. Obviously things can change once we're going through college classes. I mean, I don't think it's unusual for college students for example, to change their majors or to change what they're interested in or their pursuits, while they're attending classes and as part of that, things happen once they enter. I can tell you that I think the students, if a student gets you know mono and just says I'm not going to be able to do well I need to take a break. Is there any regulation that defines how a person who drops out or, or takes time off is is dealt with. Yes, so I, if I might, because I probably going to exceed my time I hope I can answer your question in full. Very quickly, in that scenario that that came up actually in the 1926 or the 1928 Northern District California case that we talked about her brain, whether he was still that student was a bona fide student, even though he got sick and had to drop out. While working in at a newspaper in San Francisco. And the question was whether he was deportable and whether, you know, we should just leave him. Kick him out immediately, as Mr me I was position would have it because he was no longer a student. And the issue there was no he was still a bona fide student, and the case laws replete that that's what the term bona fide student means because there's a good faith intent to continue with the studies. Now, number two in terms of if, if they do stop taking classes and they stop pursuing a course of study. At that point they are out of status, and the regulations do sort of require them to either leave or to resume their studies. So, that's that's that is very oddly written, and it seems like both sides have some some challenges but under your theory, the statute primarily addresses the students status. At the time that they seek to enter. Did they have to then be a bona fide student, like reading it the way you do in fact reading the literal language it sounds like an alien, who's living, having a resident of residents in a foreign country, who is a bona fide student qualified to pursue a full course of study so who already is in school of some sort, and then is qualified to pursue it and seeks to enter the United States for that purpose. So, what if you're not a student and you want to come to the United States on one of these visas the statute, literally read seems to foreclose that. But I think your is correct that if we read this to literally sort of doesn't make a lot of sense and a lot of different circumstances, that's why, to be perfectly candid about this statute has never been read. So literally as to strangle its meaning, it's always been read functionally to mean that if you are coming here to go to a school and attend classes and to do work study, even the way I think the work study stuff is really discussed at length in our, in all the briefings in support of the government's position. Then you can come in, we will let you in to pursue that course of study. Obviously that's supposed to be at a university but you don't have to attend the university immediately, or already be in the university is simply having proof that you've been accepted to attend those classes and to start your course of study is this adequate. And there may be some difference between you and Mr. Hughes on this point but you're not arguing that we can read the statute itself without deference to support your position, you need Chevron step two. Well, I, I think we are, we have made that argument. Implicitly I know that that sounds like a cop out but I think the reason why I say that is because the entire ratification doctrine is really an interpretive doctrine of the statute. And Mr. Hughes's brief and mine really look to the exact same history and that the point we're making is the statute has always been interpreted this way. Mr. Miano said that Congress never had a problem with interpretation courts and never had a problem interpretation. He's absolutely correct about that. And the reason why I know that he's correct about this because at least since 1947, the statute has always been interpreted to allow for practical training, including practical training after graduation which it seems is the main beef that Mr. Do we know that the original adoption of the INA do we have evidence that before its adoption under the 47, that some of the practical training with post graduation as opposed to during school. What's your best evidence on that. So I truly think that the 1950 Senate report discussion that is really, we get into the guts of it within our brief, Mr Hughes's brief gets into the guts of it as well. That is the best evidence of that because that is an acknowledgement by the Senate, that this is going on after graduation, and that we are not changing it at all. We are not changing the language. I mean honestly to your point with respect to the why the language is written this way. It's because it's vestigial I mean it is, it is a lot of this language has has been around for basically since 1924 and I know that's not a century, but that's pretty long, it's a pretty long time. Yes, sir. Go ahead, finish your thoughts. Well, I was actually going to conclude. All right, well I have a question for you. And that is, considering our precedent from 79 this annual versus ins which interprets this intent of not abandoning the foreign residents as a continuing requirement. What if anything, do you require the alien to show that he has no intent of abandoning his foreign residents, and it is a continuing showing he makes. Well, I think that that is a good point. I think that determination gets made at the port of entry, when we are when someone is being and how and with with forms or what an affidavit. I think it does, it does. Forms obviously are necessary both with the consular officer when they're approaching a consulate and saying asking for a visa to allow them to apply for admission in front of CBP. And then again with CBP and to take your point to answer your question directly. They have to show hey this is this is my current path these are the studies that I'm going to be taking. This is how long I'm going to be taking the coursework or at least presumably because I think as we all know, sometimes, I mean personally that sometimes I take more classes for a longer period of time that I initially set out to take. And, you know, do they swear that they're not abandoning their foreign residents, I'm just trying to find out how you established intent. Well, so that is a good point. I think honestly the reason is that that's not a problem is that because there is a presumption built in, both before with before the consular officer and the CBP at any port of entry, that the person is trying to come in with an intent to remain here. Well, where does the presumption come from. Honestly, it comes from the definitional definitions of immigrant versus non immigrant. The problem with that and why it's quirky is because non immigrant is not really defined it's only defined as a negative of someone who's not trying to come in to remain here indefinitely. And so, therefore, I know that that is extremely frustrating. I apologize. But what I can tell you is the way that this works in practice is that CBP and consular officers always presume when someone is approaching them, saying I'm oh don't worry I'm just coming in to see Disneyland, and I promise I'll leave immediately after that, the way that they, they presume and try to get a deal with this problem that your honor is getting at is they say, well, you have to prove to me that you are going to leave, I mean you can't just say that. I'm obviously saying that it's helpful because we do presume that they're telling the truth and I don't, I don't know if there's an affidavit or any sort of declaration that they have to swear to. I apologize for my lack of knowledge about that specific point, but I do know that they have to show documentation, they have to back that up with some sort of evidence that fits their story. I also know that when they drop out and this is the other weird thing about the after one program is that if they drop out or if they stop attending classes just a large question it was getting earlier, then the school itself is required to report that within the CBA system is the student exchange visitor information system that's extremely important. Congress really cares about that that was added in 2002, because frankly, some people were well. Some of the September 11 attackers came in under this program, and really obviously we're not students, and because of that, Congress cared about that and put that onus on the universities to report students who were not complying or we're not going to classes So the request is not applicable only at when the person seeks to enter but has an ongoing, you know, applies during the entire time the student is here. So he says that the very fact that you're verifying and asking for reporting and, you know, means that that the statutory language requires that the person that, you know, it's not just for the purpose of purpose pursuing such a course of study, but that it is only for the duration of that course of study. Right, and I know that that's an argument Mr. makes I think the distinction is that onus is not at all on the international student, the onus is on universities and programs that subscribe to the F1 program. They are the ones who have to update the database, if we put the onus on the student, and it's somebody we don't trust. Frankly, I don't understand why we would let them update their status and tell the United States government. Oh, don't worry, I am going to class. That's why it's directed to it regulates not any of the F1 international students, but the universities themselves. And is that pursuant to the to the DHS general authority and not pursuant to the F1 authority is that where? Correct. And that is in terms of terms of conditions. And that is sort of it. Once they enter into that program the universities and institutions. This is something that they have to do if they want to remain. For example, the penalty there is not, I mean, the students aren't penalized if the school screws up, at least by the United States government they're not penalized, it's the schools and they can, they might lose their ability to enroll international students if they do not comply with that provision or do not update see this. All right, any more questions. All right, then we'll hear from Mr Hughes. Thank you. Thank you, Your Honor. Paul Hughes for Apple he's the National Association of manufacturers, the US Chamber of Commerce and the Information Technology Industry Council post completion practical training has existed since at least 1947 for 74 years, and we asked the court to emphatically reject watch text efforts to have court and the program. At the bottom America thrives by attracting international talent to universities and DHS was authorized to determine that those students appropriately may complete their studies through limited practical training. We think the way to understand the legal question the authority here is to begin with section 1184 a one. That's a very important statute that expressly authorizes the secretary, quote unquote prescribed regulations that govern the quote unquote time and conditions of a non immigrants admission. This is a broad grant of authority to the secretary, which is consistent with the executive substantial immigration powers. In light of that broad delegation of authority. The question in our view, then, is there anything that precludes the secretary from adopting the OPT program. And we think the limitations can be found in two different places and put guardrails on the secretary section 1184 a one power. One would be is if there's a textual preclusion of the conditions that the secretary would seek to implement under section 1184 a one, and we don't think that f1 has any textual conclusion of this program, and I described that. The second is that in exercising the secretary's 1184 a one power to adopt conditions governing the stay of non immigrants in the United States. Those conditions have to be reasonably related to the underlying purposes of the statute secretary is implementing, including the various visa definitions. And I think that's a very important limitation in this context, because there's no doubt that the secretary has broad powers in this context, and one can think of wild hypotheticals, that would suggest that you know row DHS would allow somebody who comes in on So we think the question is, how do it seems like the current regulation is, is done in a, in a better way to meet the kind of nexus with the, with the statute that you're describing, which is describing ot opt as part of an educational experience and that the has to be recommended by the schools and there has to be oversight by the qualifying employers and the like, but the prior iteration of the rule was all about us competitiveness wasn't it and would that be supportable under, if that were still the frame and the nature of the rule would that be supportable and and if not, how do we deal with the pretext issues of that, that being the first step and this much more education oriented rule being the current. Well, so a few responses to that your honor first just as a functional matter the rule that's currently before the court is the 2016 OPT rule the challenges is 2008 rule profound mood and that's not before the court. The 1992 rule is also not directly before the court it's only before the court by implication of the 2016 rule. The second point is, as the Supreme Court instructed us in Department of Commerce, looking behind the purposes of the rule would require some sort of extraordinary exceptional evidence of bad faith or bad intent. And I don't think there's any such evidence or argument that has been made here. So then the question is, well, what is in this rule and DHS and 2016 as the court indicates provides a very robust record that is before the court that I think more than sufficiently supports the rule I think that's consistent with greater scrutiny the courts have provided regulations today than perhaps they had in prior decades. So DHS and promulgating this rule was aware of current judicial approaches and was ensured that it effectively did its homework in extensively documenting how a term I'd also point the court to the evidence that DHS relied on it, Jay 174 148 comment letters that say that extensively, as for the duration of the program the three year duration for example, DHS also made very extensive findings that show the reasonableness of why three total years is reasonable. For example, at J 182, the comment letter of the Society for Human Resources Management says that this is comparable to training programs for postdoctoral students in the three year period for the National Science Foundation, and other evidence none of those programs are required for non for American students not requiring visas. They're not part of any educational program for us, students, the purpose unlike for example, internship and residency in medical school. Well, you know, I think what the DHS was just pointing to is what's, why did they draw the three year maximum limitation and they did so because looking to the National Science Foundation brands PhD programs. And then also there's extensive evidence around J 127 130 133 that the lifecycle of one project for a STEM student doing an integrated circuit design for example is often going to be around three years. So, to get back to the statutory questions, as the court pointed out, it's been uncontroversial that DHS as part of the regulations may allow an individual to remain in the United States for up to 60 days post graduation as part of their F1 visa. Well, why can they do that because it's not inconsistent with the statute as we understand it. And second, it's a reasonable regulation that effectuates the purposes of the statute, or the same reasons we think opt is not precluded by the statute in as a reasonable interpretation. Second, looking towards doesn't doesn't your reading though read out the word solely in the statute. I you, I, you can quibble about whether it reads out temporarily. Three years. I suppose is temp temporary but why doesn't it read out the word solely, or the words solely for the purpose of pursuing such a course of study. Your Honor, because we think that that is appropriately described as the entry requirement that's what is required to say it isn't. Let's say it isn't I don't buy that let's say, well, you know, I think there's still some flexibility and understanding of what means to be a student so let's take for example, an individual who falls in love and marry somebody and adjust their status so they entered the United States as a student, but then they adjust to a K one visa. Following a marriage that is often permitted and allowable in our immigration system, and that individual, even though the individual who entered solely for one purpose, ultimately had some sort of change at a later point, but but your honor the textual language there who seeks to enter the United States temporarily and solely truly we think is best understood as the entry requirements, and I agree that that language is very important because it does put parameters on what is reasonable for DHS to adopt as a regulation. So we think it would be patently unreasonable if DHS were to promulgate a regulation saying somebody who enters with that intent, but a week later decides they don't want to go to school, they'd rather do something else they drop out, they're not furthering their education. If DHS were to enact that kind of regulation. We agree that that would be not reasonably related to the underlying purposes of the statute, and that that language that the court is pointing me to certainly defines what is in the range of reasonableness that DHS could adopt in promulgating regulations that further the purposes of the F1 statute so I want to be clear, we don't think that that language drops from the equation at all. It is important. I realize that. Are there any more questions. All right. Let's see Mr me on a we've lost you but I assume you're still on audio Why don't you take two minutes and reply. We must have lost him all together. Henderson. Mr me on his phone connection has just dropped I am calling him again. Okay. Your Honor, can you hear me. Yes. Okay. Why don't you go ahead Mr me on oh and take two minutes and reply. Okay, let me just go quickly right first of all, DHS and standing has just has switched this from allowance of competition to loss sales. So I would point out Bristol Myers squib versus Shalala is showing where this court distinguishes between injury and says that while sales is not the actual injury but it's the increased allowance of competition in regards to the long standing use of use of this program, you know ratification here isn't even applicable because they don't because your opinion dismissed the Your, your Washington opinion dismissed all the counts except for x x x x x excessive authority. So we're talking just as as as an excessive authority here. So I mean ratification is not even not even applicable. In regard to section 1184 a we seem to lose lead forgetting the, the key part is 1184 a requires DHS regulations to ensure aliens leave when they do not comply with the, with the status for which they were admitted. And that seems to have completely gone, gone by the wayside. And I would also like to address the wild. But both the government and the intervener emphasize the words seeks to enter the United States, they say that's an entry condition. And if that's what I realize you may disagree with that. But why is that an unreasonable way to read the statute, because if if if that's a reasonable way to read the statute that solves that problem, doesn't it. If it were reasonable. Tell me, tell me why it's unreasonable. To read the statute that way speaks to enter Your Honor, it's because of 1184 a which says that you have to maintain the status for which were admitted. And if you were to take that language for any other visa. You could say that all all of them are entry requirements, the tourist visa, you don't prohibit those people who enter to perform labor, but if you They could say, hey, we've entered. And so now we can allow you to work. And this isn't a wild hypothesis either because the State Department is already doing doing this. It just has not been been challenged challenged challenged yet. And the key thing is that the state that this sets down the visa requirement and they in every court case ever looking at this at student visas or any non immigrant visas have treated them. Treated the requirements is applying for the for the aliens entire stay and there's a huge number of cases dealing with student visas. They're not dealing with the with question whether Legality of regulations, but they're all treating student visas as a plot is the requirements applying from start to finish. All right. Thank you, madam. Call the next case.
judges: Henderson, Tatel, Pillard